IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ARTHUR C. BEARD; and PAULA PEAK, surviving spouse of JAMES LORKOWSKI,<br><br>Appellants,<br><br>v.<br><br>DEPARTMENT OF LABOR & INDUSTRIES, STATE OF WASHINGTON; and THE BOEING COMPANY,<br><br>Respondents. | No. 87862-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Petitioners Paula Peak, the surviving spouse of James Lorkowski, and Arthur Beard challenge the reduction in workers' compensation benefits under RCW 51.32.067, .220, and .225. Both Lorkowski and Beard were determined to be permanently and totally disabled under the "Industrial Insurance Act" (IIA), Title 51 RCW, and awarded pensions. Because each worker was married, they were also required to elect a survivorship option for their pension under RCW 51.32.067. Their elections resulted in reduced pension rates in exchange for survivorship benefits. Both workers later became eligible for federal social security benefits once they reached retirement age. As a result, the Department of Labor and Industries (Department) reduced their pensions by the amount they were receiving in social security benefits. Peak and Beard argue that according to the plain language of RCW 51.32.220(5), this

reduced rate cannot go below their pre-actuarially reduced pension rates. We disagree and affirm.

## BACKGROUND

James Lorkowski sustained an injury in his course of employment with the Boeing Company (Boeing). Lorkowski died in 2023 for reasons unrelated to his injury. The Department had found Lorkowski was permanently and totally disabled, and approved him for pension benefits effective August 16, 2020. The Department then sent Lorkowski a letter informing him that because he was married, he could choose to receive one of three options concerning his pension benefits: (1) "the full monthly benefit minus any deductions" but his beneficiary "will not receive ongoing benefits after [his] death"; (2) "a reduced monthly benefit" and if he died "from a cause unrelated to [his] covered injury or illness, [his] beneficiary will receive the same level of benefit [he was] receiving minus any deduction"; or (3) "a reduced monthly benefit" and if he "die[d] from a cause unrelated to [his] covered injury or illness, [his] beneficiary will receive 50% of the benefit level [he was] receiving minus any deduction for the rest of [the spouse's] life." On August 21, 2020, Lorkowski elected the second option.

Lorkowski began receiving social security retirement benefits in January 2021. In July 2022 and February 2023, the Department issued orders reducing Lorkowski's pension benefits based on his simultaneous receipt of federal social security benefits. On April 4, 2023, Lorkowski appealed the reduction to the Board of Industrial Insurance Appeals (Board). Lorkowski passed away on April 5, 2023, and the Department approved Peak's application to claim his pension benefits.

2

Arthur Beard suffered an industrial injury in early January 2015. The Department determined he was permanently and totally disabled and approved his pension benefits on March 31, 2020. When prompted by the Department to select one of the three options available to married workers, Beard selected option three, a reduced monthly pension benefit so his spouse would receive a portion of the benefit if he died from a cause unrelated to his covered injury.

On September 27, 2021, Beard reached the federal retirement age[1] and began receiving social security retirement benefits rather than social security disability benefits. Accordingly, in October 2021, the Department issued an order adjusting Beard's pension compensation effective November 16, 2021. On February 2, 2023, Beard appealed the adjustment to the Board.

In their respective appeals to the Board, both Peak and Beard argued that the Department's adjustments were incorrect because the "offset should be based . . . on [the worker's] time loss compensation rate notwithstanding any reduction for surviving spouse election." Peak and Beard both moved for summary judgment based upon stipulated facts. The Board disagreed with Peak and Beard's reading of the relevant statutes and affirmed the Department's decisions as a matter of law. Peak and Beard appealed their Board decisions to the superior court and filed a stipulated motion to consolidate the cases, which the court granted.

The superior court granted summary judgment in favor of the Department. Peak and Beard timely appealed to this court.

---

[1] 42 U.S.C. § 416(I).

DISCUSSION

I. Appeal of Order Granting Summary Judgment to the Department

Peak and Beard contend that the Department cannot reduce their benefits below the rate they were receiving before they elected for survivorship rights. They base this argument on the plain language of RCW 51.32.220(5), which allows the Department to reduce pension benefits once a worker begins receiving social security benefits, but not below "the greater amount the worker may be entitled to" under the IIA or the SSA. The Department disagrees,[2] arguing that related statutes require application of the survivorship reduction before the social security offset. And, it argues, the phrase in RCW 51.32.220(5)—"may be entitled to"—refers to the amount the IIA "provides in all of its provisions," including actuarial reductions. Thus, the Department contends that "for a worker who has elected to undergo an actuarial reduction, the actuarially reduced benefit is the benefit the worker may be entitled to receive under the [IIA]."

The IIA, Title 51 RCW, governs judicial review of worker's compensation decisions. Smith v. Dep't of Lab. & Indus., 22 Wn. App. 2d 500, 506, 512 P.3d 566 (2022). On appeal, the appellate court reviews the superior court's decision, not the Board's order. Id.; RCW 51.52.140. "We review the superior court's decision in the same manner as other civil cases." Id. We review summary judgment orders de novo. Sartin v. Est. of McPike, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020). Summary judgment is appropriate if no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. See CR 56(c). While "[w]e may substitute our own judgment for that of the agency regarding issues of law, . . we give

_____

[2] Boeing's briefing on appeal contains minimal argument and states that it "aligns" with the Department's arguments.

4

great weight to the agency's interpretation of the law it administers." <u>Bennerstrom v. Dep't of Lab. & Indus.</u>, 120 Wn. App. 853, 858, 86 P.3d 826 (2004).

### A. Reverse Offset Provisions

"Both federal and state governments have attempted to coordinate benefits paid to workers." <u>Harris v. Dep't of Lab. & Indus.</u>, 120 Wn.2d 461, 466, 843 P.2d 1056 (1993). Fearful of duplicative state and federal benefits that could "erode state and federal programs and discourage workers from returning to work," the federal government passed legislation to better coordinate benefits. <u>Id.</u> at 466-67. Thus, the SSA allows the federal government to reduce the amount of social security disability benefits it pays to a worker under the age of 65 who also receives state benefits. 42 U.S.C. § 424a. Additionally, federal law creates an exception to this general offset rule that allows a "reverse offset" if a state passes enabling legislation. <u>Frazier v. Dep't of Lab. & Indus.</u>, 101 Wn. App. 411, 416, 3 P.3d 221 (2000) (citing 42 U.S.C. § 424a(d)). Thus, under federal law, a state may "reduce the amount of disability compensation it pays out if the worker is receiving social security disability benefits." <u>Id</u>. "The effect of this provision [in the SSA] is that it allows the state to shift costs to the federal government through its reverse offset program." <u>Harris</u>, 120 Wn.2d at 469.

In 1975, the Washington Legislature enacted a reverse offset provision for disability compensation that reduces a worker's state disability compensation benefits if they are receiving social security disability benefits ("disability benefits offset statute"). LAWS OF 1975, 1st Ex. Sess., ch. 286, § 3 (codified as RCW 51.32.220); <u>see</u> <u>Harris</u>, 120 Wn.2d at 467. RCW 51.32.220(1) states,

> [f]or persons receiving compensation for temporary or permanent total disability pursuant to the provisions of this chapter, such compensation

5

shall be reduced by an amount equal to the benefits payable under the federal old-age, survivors, and disability insurance act as now or hereafter amended not to exceed the amount of the reduction established pursuant to 42 U.S.C. Sec. 424a.

However, such a reduction will not apply "when the combined compensation provided pursuant to this chapter and the [SSA] is less than the total benefits to which the federal reduction would apply, pursuant to 42 U.S.C. [§] 424a." Id. Lastly, subsection (1) of the disability benefits offset statute applies to workers aged sixty-five and older. RCW 51.32.220(7)(c).

In 1986, the Washington Legislature enacted additional reverse offset legislation permitting a worker's state disability compensation to be reduced by the amount of social security *retirement* benefits the worker receives ("retirement benefits offset statute"). LAWS OF 1986, ch. 59, § 5, (codified as RCW 51.32.225). "In effect, RCW 51.32.225 extended Washington's reverse offset to cover those 65 and older who receive federal retirement benefits." Harris, 120 Wn.2d at 467.

Peak and Beard's primary argument is that the plain language of RCW 51.32.220—specifically subsection (5)—requires the Department to reference "the worker's base disability rate prior to any reductions, including an actuarial reduction made pursuant to the pension option they select" under RCW 51.32.067. Thus, they contend that the Department's application of the reverse offset impermissibly lowered their monthly payments below what the statute permits.[3] The Department counters that reading these related provisions together—RCW 51.32.225(3) and RCW

---

[3] Once Lorkowski died, he no longer received social security benefits; thus, the reverse offset that applied to his pension was removed. However, Peak and Beard argue that "pension benefits were . . . improperly reduced to [] Lorkowski between July 16, 2022, and April 5, 2023, and [ ] Peak is entitled to pursue these underpaid benefits pursuant to RCW 51.32.040(2)(a)."

51.32.220(5)—requires the actuarial reduction to be taken first, followed by the offset. We agree with the Department.[4]

"[T]he superior court's construction of a statute is a question of law, which we review de novo." Smith, 22 Wn. App. 2d at 506. "In construing statutes, the goal is to carry out the intent of the Legislature." Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 6, 721 P.2d 1 (1986). To determine legislative intent, we first look at the language of the statute. In re Custody of Smith, 137 Wn.2d 1, 8, 969 P.2d 21 (1998). " 'When the words in a statute are clear and unequivocal, this court is required to assume the Legislature meant exactly what it said and apply the statute as written.' " Id. (quoting Duke v. Boyd, 133 Wn.2d 80, 87, 942 P.2d 351 (1997) (citations omitted)). "When a statute's plain language is unambiguous, meaning it is subject to only one reasonable interpretation, our inquiry ends, and we will not resort to interpretive tools such as legislative history." PeaceHealth St. Joseph Med. Ctr. v. Dep't of Revenue, 196 Wn.2d 1, 8, 468 P.3d 1056 (2020). However, " 'a statute is not ambiguous merely because different interpretations are conceivable.' " Est. of Haselwood v. Bremerton Ice Arena, Inc., 166 Wn.2d 489, 498, 210 P.3d 308 (2009) (quoting State v. Hahn, 83 Wn. App. 825, 831, 924 P.2d 392 (1996)).

As noted above, once the Department determines a worker is totally and permanently disabled, the worker must elect how much, if any, of the benefits they

---

[4] Peak and Beard also rely on the "liberal construction clause" to contend that the competing constructions of the statute require this court to resolve the question in their favor. Although the liberal construction doctrine requires us to resolve doubts in favor of the worker when construing chapter 51.32 RCW, the doctrine "applies only when a court must construe an ambiguous statute." Scott v. Dep't of Lab. & Indus., 8 Wn. App. 2d 473, 477-78, 442 P.3d 28 (2019). Here, because the plain language of RCW 51.32.225(5) is clear and unambiguous, the liberal construction doctrine does not apply.

receive will pass on to a surviving spouse, children, or others. RCW 51.32.067(1). There

are three options:

> (a) **Option I.** An injured worker selecting this option shall receive the benefits provided by RCW 51.32.060, with no benefits being paid to the worker's surviving spouse, children, or others.

> (b) **Option II.** An injured worker selecting this option shall receive an actuarially reduced benefit which upon death shall be continued throughout the life of and paid to the surviving spouse, child, or other dependent as the worker has nominated by written designation duly executed and filed with the department.

> (c) **Option III.** An injured worker selecting this option shall receive an actuarially reduced benefit and, upon death, one-half of the reduced benefit shall be continued throughout the life of and paid to the surviving spouse, child, or other dependent as the worker has nominated by written designation duly executed and filed with the department.

RCW 51.32.067(1)(a)-(c). It is undisputed that Peak and Beard elected options—options

II and III, respectively—that resulted in their receipt of actuarially reduced benefits.

Later, when each began receiving social security benefits, which resulted in

overlapping benefits, the Department applied the reverse offset governed by RCW

51.32.225, the retirement benefits offset statute. That statute states in relevant part:

> (1) For persons receiving compensation for temporary or permanent total disability under this title, the compensation shall be reduced by the department to allow an offset for social security retirement benefits payable under the federal social security, old age survivors, and disability insurance act, 42 U.S.C . . . .

> (2) Reductions for social security retirement benefits under this section shall comply with the procedures in RCW 51.32.220 (1) through (6) and with any other procedures established by the department to administer this section . . . .

> (3) Any reduction in compensation made under chapter 58, Laws of 1986, shall be made before the reduction established in this section.

RCW 51.32.225.

The statute requires compliance "with the procedures in RCW 51.32.220 (1) through (6)," i.e., the disability benefits offset statute. RCW 51.32.225(2). Further, subsection (3) of the retirement benefits offset statute specifies that "[a]ny reduction in compensation made under chapter 58, Laws of 1986, shall be made before the reduction established in this section." RCW 51.32.225(3). The referenced chapter 58 RCW includes the actuarial reductions codified in RCW 51.32.067 as options II and III. See LAWS OF 1986, ch. 58, § 4. Accordingly, the plain language of the retirement benefits offset statute, RCW 51.32.225(3), requires that the Department first reduce pension benefits in accordance with an election of option II or III under RCW 51.32.067, followed by the offset for social security retirement benefits. In their reply brief, Peak and Beard agree with this reading.

Nevertheless, the parties dispute the interpretation of subsection (5) of the disability benefits offset statute, RCW 51.32.220, which the retirement benefits offset statute references for the applicable "procedures." In turn, RCW 51.32.220 sets out the procedures for calculating reverse offsets and provides as follows:

> (1) For persons receiving compensation for . . . permanent total disability pursuant to the provisions of this chapter, such compensation shall be reduced by an amount equal to the benefits payable under the [SSA] as now or hereafter amended not to exceed the amount of the reduction established pursuant to 42 U.S.C. Sec. 424a . . . .

> (2) Any reduction under subsection (1) of this section shall be effective the month following the month in which the department or self-insurer is notified by the federal social security administration that the person is receiving disability benefits under the [SSA]: PROVIDED, That in the event of an overpayment of benefits the department or self-insurer may not recover more than the overpayments for the six months immediately preceding the date the department or self-insurer notifies the worker that an overpayment has occurred: PROVIDED FURTHER, That upon determining that there has been an overpayment, the department or self-insurer shall immediately notify the person who received the

overpayment that he or she shall be required to make repayment pursuant to this section and RCW 51.32.230.

(3) Recovery of any overpayment must be taken from future temporary or permanent total disability benefits or permanent partial disability benefits provided by this title. In the case of temporary or permanent total disability benefits, the recovery shall not exceed twenty-five percent of the monthly amount due from the department or self-insurer or one-sixth of the total overpayment, whichever is the lesser.

(4) No reduction may be made unless the worker receives notice of the reduction prior to the month in which the reduction is made.

(5) In no event shall the reduction reduce total benefits to less than the greater amount the worker may be entitled to under this title or the [SSA].

(6) The director, pursuant to rules adopted in accordance with the procedures provided in the administrative procedure act, chapter 34.05 RCW, may exercise his or her discretion to waive, in whole or in part, the amount of any overpayment where the recovery would be against equity and good conscience.

Peak and Beard argue that "the phrase 'may be entitled to' [in subsection (5)] requires reference to the worker's base disability rate prior to any reductions, including an actuarial reduction made pursuant to the pension option they select." They contend that "[t]he Department's interpretation . . . fails to give full effect to the precise language used in RCW 51.32.220(5)." We disagree.

Peak and Beard's interpretation of RCW 51.32.220(5) reads the subsection in isolation, whereas plain language interpretation is not so narrowly focused. Ordinarily, "[w]e derive legislative intent solely from the plain language of the statute, considering the text of the provision, the context of the statute, related provisions, amendments, and the statutory scheme as a whole." PeaceHealth, 196 Wn.2d at 7-8.

The plain language of RCW 51.32.220(5) states that a worker may not have their total benefits reduced to less than what the worker "may be entitled to under this title or

the [SSA]." The language "under this title" plainly directs that RCW 51.32.220(5) be read with reference to the other provisions of the IIA, Title 51 RCW, including those that explain how benefits are calculated—including the possibility of receiving actuarially reduced benefits pursuant to RCW 51.32.067(1)(b) and (c). Moreover, under principles of statutory interpretation, "[w]e read each provision of a statute in relation to the other provisions and construe a statute as a whole." Hubbard v. Dep't of Lab. & Indus., 140 Wn.2d 35, 43, 992 P.2d 1002 (2000). See also Pub. Util. Dist. No.1 of Snohomish County v. State, 4 Wn.3d 228, 234, 562 P.3d 343 (2025) (when determining plain meaning, this court considers the statutory scheme as a whole and related statutes).

As noted above, RCW 51.32.225(3) of the retirement benefits offset statute requires that "[a]ny reduction in compensation made under chapter 58, Laws of 1986, shall be made *before* the reduction established in this section." (Emphasis added.) Thus, once a worker has agreed to an option that reduces their benefits under RCW 51.32.067, actuarial reductions are applied to the disability benefits first, followed by the retirement benefits. RCW 51.32.225(2), (3). Accordingly, it is not correct that workers such as Peak and Beard "may be entitled" to non-actuarially reduced pension benefits. They are entitled only to the actuarially reduced benefits under the option they selected.[5]

Peak and Beard further argue that because the legislature used the words " 'may be entitled to,' not 'is entitled to,' 'is currently receiving,' or some other language which clearly requires reference to the worker's then-current entitlement," the Department's

---

[5] The only exceptions are that workers may change their option selection to option I if they divorce, RCW 51.32.067(3), or if their nominated beneficiary dies, RCW 51.32.067(4). Such changes are "a one-time adjustment and will be permanent for the life of the worker." RCW 51.32.067(5).

11

interpretation "renders the 'may be entitled to' provision meaningless at worst, and at best distorts the meaning of the word 'may' beyond recognition." This argument is unavailing. "May" simply refers to the possibility that benefits are subject to adjustment under other provisions of the IIA.[6]

Peak and Beard contend that the legislative purpose of making the actuarial deduction first was to ensure that the pension fund was able to remain solvent, "[b]ut that reduction does not impact the amount the worker may be entitled to under the IIA" because "if it did, the language of RCW 51.32.225(3) specifying the order of reductions would be unnecessary and superfluous."[7] Thus, they argue, even if the Department should first make the appropriate actuarial reduction, it must "then add the worker's monthly [social security retirement benefit] income to the post-actuarial reduction monthly pension benefit" and take a retirement benefits offset only if the combined benefit amount exceeded the greater of either the worker's pre-actuarially reduced pension amount, or 80 percent of the worker's average current earnings (ACE).

However, the retirement benefits offset statute expressly references the procedures in the disability benefits offset statute: "Reductions for social security retirement benefits under this section shall comply with the procedures in RCW 51.32.220 (1) through (6)." RCW 51.32.225(2). And while the retirement benefits offset

---

[6] Hubbard, an IIA case involving benefits due when a claim is reopened based on aggravation of a prior injury, supports the Department's interpretation. 140 Wn.2d 35. In Hubbard, the relevant portion of the statute provided that the director " 'may . . . readjust the rate of compensation in accordance with the rules in this section.' " Id. at 41 (quoting RCW 51.32.160(1)(a)). The Supreme Court reasoned, "[b]y stating that the rate of compensation 'may,' and not 'shall,' be readjusted," the statute "implie[d] that the Department must look to other provisions to determine whether a certain claimant is entitled to further wage replacement compensation." Id. Similarly, here, the phrase "may be entitled to" along with the reference to benefits a worker may be entitled to "under this chapter" require the Department to look to other provisions of the IIA to determine the benefit amount before the offset.

[7] Peak and Beard do not elaborate on how the language of RCW 51.32.225(3) would be rendered "unnecessary" or "superfluous" under the Department's interpretation.

statute was enacted after the referenced procedures in RCW 51.32.220, it did not amend those procedures or include any mention of pre-actuarially reduced benefits. "The court must not add words where the legislature has chosen not to include them, and the statute must be construed so that all language is given effect." City of Seattle v. Fuller, 177 Wn.2d 263, 269, 300 P.3d 340 (2013).

Here, Peak and Beard chose to reduce their state disability benefits under RCW 51.32.067 so their spouses could receive survivor benefits. Peak and Beard cannot now circumvent their elected deductions. Interpreting the statute to allow them to take a retirement benefits offset only if the combined benefit amount exceed the greater of either the worker's *pre-actuarially reduced* pension amount or the worker's 80 percent ACE, would result in Peak and Beard receiving lower offsets than they would otherwise experience *in addition to* their spouses receiving survivorship benefits after their deaths. Because such a result would not give effect to the worker's choice of actuarially reduced benefits under RCW 51.32.067(1)(a)-(c), it would result in an improper duplication of benefits, contrary to the purpose of the reverse offset statute.[8] Harris, 120 Wn.2d at 480 ("RCW 51.32.225 serves a legitimate purpose in avoiding duplication of benefits.").

In sum, the plain meaning of RCW 51.32.220(5), in light of the statutory scheme and the related statutes—RCW 51.32.067, allowing workers to select actuarially reduced disability benefits, RCW 51.32.220, the disability benefits offset statute, and RCW 51.220.225, the retirement benefits offset statute—is that the amount the worker

---

[8] Our Supreme Court has recognized "[s]tate disability benefits and federal old age social security benefits serve the same purpose: to restore earnings due to wage-loss. The cause of wage loss— whether it be old age, disability, or unemployment—is irrelevant." Harris, 120 Wn.2d at 480.

"may be entitled to under this title" is the post-actuarial amount. The superior court did not err in granting the Department's motion for summary judgment.

      B.  Preemption and Equal Protection Claims

Finally, Peak and Beard argue that RCW 51.32.225 is preempted by federal law and violates equal protection under the federal and state constitutions.[9] However, the Washington Supreme Court rejected both arguments in Harris, 120 Wn.2d 461.

In Harris, the petitioner also challenged the reduction in their workers' compensation benefits under RCW 51.32.225 claiming, among other arguments, that the statute was preempted and that it violated both the federal and state constitutions' equal protection provisions. 120 Wn.2d at 467, 476. Our Supreme Court disagreed. Id. at 471, 481. As to preemption, the Harris court noted that even if 42 U.S.C. 424a allowed states to enact reverse offsets only for federal disability payments, it did "not contain clear evidence of congressional intent to preempt state reverse offsets of federal social security retirement benefits"; thus, the court declined to infer preemption from Congress's silence. Id. at 470. The court further reasoned that because 42 U.S.C. 424a's offset provisions apply a federal offset only to those *under 65*, Congress expressed no policy on state reverse offsets for federal disability or retirement benefits for those *over 65*, such as RCW 51.32.225. Harris, 120 Wn.2d at 470. Finally, the court concluded that because both disability and retirement benefits are forms of wage-loss

---

[9] Specifically, Peak and Beard argue that RCW 51.32.225 violates the privileges and immunities clause of the Washington State Constitution because "[t]he equal protection clause of the Fourteenth Amendment and the privileges and immunities clause of Const. art. 1, section 12 are substantially identical and have been so regarded by this court." Seattle Sch. Dist. No. 1 v. Dep't of Lab. & Indus., 116 Wn.2d 352, 362, 804 P.2d 621 (1991).

protection, the termination of one of those benefit sources is a rational way to avoid duplicative benefits. Id. at 471, 480.

As to the petitioner's equal protection challenge, the court determined that because RCW 51.32.225 is "economic legislation which neither sets up a suspect class nor affects a fundamental right, rational basis review is appropriate."[10] Id. at 477. Accordingly, it reasoned that even if RCW 51.32.225 applies only to social security retirement benefits and no other types of benefits or support income received from another source, such as private insurance, the statute did not violate equal protection, as the legislature is permitted to address problems in a piecemeal fashion. Id. at 478. Discussed above, it also found there were "several legitimate reasons" for the legislation, including that government efforts to avoid duplication of disability benefits is a legitimate legislative purpose. Id. at 480-81.

Peak and Beard dedicate a portion of their brief to argue that later cases informed by Harris were incorrectly decided.[11] But they acknowledge that "this Court cannot overrule Washington Supreme Court precedent."[12] Indeed, this court is bound by

---

[10] Harris did not address equal protection arguments under the state constitution because the petitioner did not brief whether the Washington Constitution provides greater protection. 120 Wn.2d at 476 n.10.

[11] The appellants cited Frazier, 101 Wn. App. at 420 (holding Department did not improperly reduce a petitioner's state disability benefits by amount of social security retirement benefits because purpose of statute is to compensate without allowing a "windfall"). Appellants argue that the Frazier court's reliance on three other cases, Herzog, Potter, and Ravsten, was inappropriate, because all three concerned offsets as they relate to social security disability benefits and not social security retirement benefits. Herzog v. Dep't of Labor & Indus., 40 Wn. App. 20, 696 P.2d 1247 (1985); Potter v. Dep't of Lab. & Indus., 101 Wn. App. 399, 3 P.3d 229 (2000); Ravsten v. Dep't of Lab. & Indus., 108 Wn.2d 143, 736 P.2d 265 (1987).

[12] Peak and Beard also cite to out-of-state cases that held the opposite of Harris: Merrill v. Utah Lab. Comm'n, 2009 UT 26, ¶ 29, 223 P.3d 1089 (2008) (holding "workers' compensation benefits and social security retirement benefits are not duplicative"); Reesor v. Mont. State Fund, 2004 MT 370, ¶ 24, 103 P.3d 1019 (2004) ("[S]ocial security retirement benefits are not wage loss benefits."); Wal-Mart Stores, Inc. v. Keel, 2001-3013, p.10 (La. 4/3/02), 817 So. 2d 1, 8 (quoting Golden v. Westark Comm. Coll., 333 Ark. 41, 969 S.W.2d 154, 159 (1998) (" '[W]e fail to see how workers' compensation benefits paid for loss of the ability to earn the same wages and a retirement benefit under social security are duplicative in any respect.' "); State ex. rel. Boan v. Richardson, 482 S.E.2d 162, 168 (1996) ("[W]e

Harris, which explicitly rejected the exact preemption and constitutional equal protection arguments Peak and Beard make here. See 120 Wn.2d at 471, 481; 1000 Virginia Ltd. P'ship v. Vertecs Corp., 158 Wn.2d 566, 590, 146 P.3d 423 (2006) ("the Court of Appeals is bound to follow precedent established by [the Washington Supreme Court]"). Accordingly, we affirm the superior court's dismissal of Peak and Beard's preemption and equal protection claims.

## II.  Attorney Fees

Peak and Beard also request fees on appeal pursuant to RAP 18.1 and RCW 51.52.130. RAP 18.1(a) permits this court to award fees on appeal if applicable law grants the right. RCW 51.52.130(1) allows the award of a "reasonable fee for the services of the worker's or beneficiary's attorney," if the "order is reversed or modified and additional relief is granted to a worker or beneficiary." Because we affirm the summary judgment order, we conclude Peak and Beard are not entitled to attorney fees under RCW 51.52.130.

CONCLUSION

We affirm.

_Chung, J._

WE CONCUR:

_Díaz, J._

_____

likewise fail to see how the permanent total disability payments awarded in this case can be considered duplicative of old age social security benefits."). These cases do not control here.

16